IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **SKY TECHNOLOGIES LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **CIVIL ACTION NO. 2:03-CV-454 (DF)** |
| § | |
| **IBM, INC.,** § | |
| § | |
| **Defendants.** § | |
| § | |

## ORDER

Before the Court is Plaintiff Sky Technologies LLC's Motion for Partial Reconsideration of Judge McKee's Order of November 28, 2005 (Doc. No. 210) and Defendant IBM, Inc.'s Motion to Compel Complete and Proper Responses to its First set of Requests for Admission (Doc. No. 214) and Supplemental Motion to Compel Production of Alleged Privileged Documents Based on a Subject Matter Waiver of the Privilege (Doc. No. 268). The Court, having considered the motions, responses, and all other relevant pleadings and papers, finds Plaintiff's motion for partial reconsideration of Judge McKee's November 28, 2005, Order should be GRANTED IN PART and DENIED IN PART. IBM's motion to compel responses to requests for admission should be DENIED and supplemental motion to compel should be GRANTED IN PART.

**I.**

**BACKGROUND**

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Defendant

IBM's ("IBM") motion to compel production of alleged privileged documents (Doc. No. 138) was referred to the Honorable Harry McKee for the purposes of hearing and determining said motion. *See* Doc. No. 140. In its motion, IBM requested Plaintiff be compelled to produce certain documents on its privilege log based on waiver of the attorney-client privilege. IBM argued that Plaintiff had waived the attorney-client privilege by including certain third parties in these otherwise privileged communications.[1] IBM further asserted that such waiver amounted to a waiver as to all communications related to the subject matter disclosed therein.[2]

On November 22, 2005, Judge McKee conducted a telephonic hearing regarding IBM's motion to compel. On November 28, 2005, Judge McKee issued a written order requiring Plaintiff to produce all documents communicated to all 21 individuals identified in IBM's motion. *See* Judge McKee's Order at 2-3. Judge McKee also held that Sky had waived its attorney-client privilege as to the document identified as SKY 101183-85, the substance of which was discussed by Sky's patent attorney, Maureen Stretch, at her deposition and ordered Sky to produced the document identified as SKY 107363-391 because it did not fall under the protection of attorney-client privilege. *Id.* at 3-4 Lastly, Judge McKee denied IBM's motion to compel all documents dealing with construction,

---

[1] IBM's motion to compel identified the following individuals listed on Sky's privilege logs as third parties: (1) Ashtiana Sundeer of "Spirited Communications," (2) Robert Lopes of ThinkFire, (3) R. Cassey of Anderson Consulting, (4) P. Schmidt of Anderson Consulting, (5) B. Nichols of Launch Co., (6) M. Allard of Launch Co., (7) S. Parker of Launch Co., (8) P. Roeser of Devereux Group, (9) K. Hopkins of Cross Atlantic Capital Partners, (10) E. Kahn of EKMS; (11) V. Sperduto of WitSoundView; (12) George Powlick of Doughty Hanson, (13) Vicki St. John of Andersen Consulting, (14) John Sayah of IBM, (15) Russell Hoag of Hewlett Packard, (16) Jesse Abzug of IBM, (17) Barry Borden of LMA Group, (18) Michael Zigman of WitSoundView, (19) William Gilroy of WitSoundView, (20) James Walker of 3i, and (21) Dan McCurdy of ThinkFire.

[2] This is the issued raised in IBM's supplemental motion addressed herein.

infringement, scope, valuation, and prosecution of the patents-in-suit based on Plaintiff's wavier of privilege. *Id.* at 3. Judge McKee did not address the scope of the waiver of privilege. *Id.*

Plaintiff now moves for partial reconsideration of Judge McKee's November 28 Order (Doc. No. 210). Plaintiff argues that "Judge McKee's Order was based on the clearly erroneous belief that all of the 21 individuals were improper third parties whose presence destroyed the privilege. Specifically, Plaintiff asserts that Judge McKee erred in finding that it waived the attorney-client privilege as to documents disclosed to (1) Barry Bordon, the former CEO of Sky's predecessor Ozro, (2) Ashtiana Sundeer of "Spirited Communications," (3) E. Kahn of EKMS, (4) Vito Sperduto of WitSoundView, (5) Michael Zigman of WitSoundView, (6) William Gilroy of WitSoundView, and (7) Dan McCurdy of ThinkFire. Plaintiff further asserts that Judge McKee erred by compelling it to disclose privileged documents from Maureen Stretch – documents designated SKY 10183-85 and SKY 107363-91.

Additionally, IBM moves this Court for a determination of the scope of Plaintiff's attorney-client privilege waiver (Doc. No. 268). IBM argues that Plaintiff's waiver extends beyond the specific documents to which a determination of waiver was made, to the subject matter disclosed in those documents. Specifically, IBM asserts that "[u]nder established law, the scope of waiver is a 'subject matter' waiver that extends to all documents listed on [Plaintiff's] privilege logs to the extent they relate to the same subject matters as to which the Court has already found a waiver of privilege." IBM's Supp. Motion at 1. Accordingly, IBM requests that all such documents on Plaintiff's privilege log be produced, or in the alternative, Plaintiff submit the documents to the Court for an *in camera* inspection.

The last matter addressed by the Court herein is IBM's motion to compel complete and

proper responses to its first set of requests for admission ("RFAs") (Doc. No. 214). In its motion, IBM asserts that Plaintiff's responses to its RFAs are improper, incomplete, or otherwise in violation of Rule 36 of the Federal Rules of Civil Procedure. IBM argues that some of Plaintiff's objections are baseless, and Plaintiff has denied some RFAs where "such denials contradict the express disclosures of the parties' documents and the express admissions of [Plaintiff's] witnesses and experts." IBM's Motion to Compel at 2.

## II.

## DISCUSSION

**A.    Waiver**

This Court may set aside or modify the Magistrate Judge's order only if the order was based on a clearly erroneous finding of fact or if it was contrary to law. *See* 28 U.S.C. 636(b)(1)(A). Plaintiff moves for reconsideration of that portion of Judge McKee's November 28 Order to the extent that it requires disclosure of privileged information. Plaintiff asserts that Judge McKee's Order is clearly erroneous because he failed to consider each of the twenty-one individual's unique position or relationship with respect to Plaintiff, but rather made a blanket finding of waiver as to all twenty-one individuals. In this regard, the Court agrees. To determine the extent of waiver of the attorney-client privilege, the Court must consider the context within which waiver is asserted. Accordingly, the Court considers each individual addressed in Plaintiff's motion.

The attorney-client privilege protects communications between attorney and client made for the purpose of furnishing or obtaining professional legal advice or assistance. *In re LTV Securities Litigation*, 89 F.R.D. 595, 599-600 (N.D. Tex.1981). The privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the

lawyer to enable him to give sound advice. *Upjohn Company v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683 (1981). Whenever legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are, at the instance of the client, permanently protected. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977). Here, the dispute is not wether the documents in question are subject to attorney-client privilege, but rather if the privilege has been waived. IBM contends that the privilege was waived when such documents were disclosed to third-parties.

The attorney-client privilege is construed "no more broadly than is necessary to effectuate its purpose." *In re LTV Securities Litigation,* 89 F.R.D. at 600. The attorney-client relationship itself does not create a cloak of protection for all conversations between attorney and client. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). Indeed, the privilege does not protect communications between the client and one not a lawyer. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Of particular concern here, [w]hen relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege." *Nguyen*, 197 F.3d at 207. However, the mere fact that such protected information is furnished to a corporate board or audit committee which then makes business use of such advice, does not convert legal advice into discoverable business advice. *In Re LTV Sec.Litig.,* 89 F.R.D. at 600. "[I]f it is clear that the information contained in the document was intended to be disseminated to those outside the cloister of confidentiality, then the privilege is waived." *United States v. Mobil Corp.*, 149 F.R.D. 533, 537 (N.D. Tex.1993).

It is undisputed that communications between a corporation and its inside counsel are protected in the same manner and to the same degree as communications with outside counsel.

*Upjohn Co. v. United States,* 449 U.S. 383, 389-97, 101 S.Ct. 677, 682-86 (1981); *In re LTV Securities Litigation,* 89 F.R.D. at 602. In *Upjohn,* the Supreme Court held that the privilege applies to communications by any corporate employee, *regardless of position*, when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation. 449 U.S. at 394, 101 S.Ct. at 685 (emphasis added). Further, the Court held that each case must be evaluated to determine whether application of the privilege would further the underlying purpose of the privilege. *Id.* at 396-97, 101 S.Ct. at 686.

Defendant cites *In re Beiter Co.*, 16 F.R.D. 929 (8th Cir. 1994), to support its position that the Court must look to the relationship of the parties in accessing waiver. In that case, the petitioner filed a writ of mandamus appealing an order from the district court, which required disclosure of information from the petitioner's independent consultant. *Id.* The district court's ruling found that a partnership waives the attorney-client privilege by disclosing otherwise privileged materials to a consultant who was neither an employee of the partnership nor an attorney for the partnership. *Id.* On appeal, the Eighth Circuit found that, under such circumstances, there was no principled reason to distinguish between the consultant and an employee. *Id.* at 936-37 (citing *McCaugherty v. Sifferman,* 132 F.R.D. 234, 239 (N.D. Cal.1990)); *see, also In re Copper Market Antitrust Litigation,* 200 F.R.D. 213, 218-19 (S.D.N.Y.2001) (holding that a consultant's "independent contractor status" was no basis for excluding communications between the consultant and the corporation's attorney from the protection of privilege). Thus, the relevant inquiry becomes the nature of the party's duties and relationship rather than the party's status as an employee.

While acknowledging that the *Bieter* case supports Plaintiff's position, IBM attempts to

distinguish *Bieter* based, primarily, on evidentiary grounds. It asserts that Plaintiff has failed to present any evidence establishing the criteria require by *Bieter,* and "new evidence" Plaintiff failed to submit in response to IBM's motion to compel should not be considered. Accordingly, IBM argues that Plaintiff fails to meet its burden of showing the documents are privileged.

The *Bieter* court acknowledged the complexities of modern day corporate activities and the need to apply existing law in accordance with such realities. *In re Bieter,* 16 F.3d at 937-38 (citing *Upjohn v. United States,* 449 U.S. 383 (1981)). The court noted "there undoubtedly are situations ... in which too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely." *Id.* The court also recognized that sound legal advice and advocacy serves important public interest and depends on the free flow of information to the attorney. *Bieter,* 16 F.3d at 937-38. For these reasons, the *Bieter* court ultimately concluded that, based on the evidence presented regarding the relationship between the consultant and the members of the partnership, the consultant likely possessed information possessed by no other, and that this made him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to fully advise his client. *Id.; see, also Steele v. First Nat'l Bank in Wichita,* No. 90-1592-B, 1992 WL 123818, at *2 (D.Kan. May 26, 1992) (under specific facts presented, and noting existence of privilege should be determined on a case-by-case basis, court held presence of client's consultant at meeting between client and client's attorney did not result in waiver of attorney-client privilege) (citing *Upjohn Co.* 449 U.S. at 396-97).

Turning to the instant case, and based on the principles outlined by the *Bieter* court, this Court finds: (1) Plaintiff has established that Barry Borden was Plaintiff's CEO and member of its

board of directors, and, therefore, communication between Mr. Borden and Plaintiff's attorneys are protected; (2) with respect to Ashtinan Sundeer, regardless of how vital her role was in the company, in executing her duties, she was required to view privileged information, and under such circumstances, the privilege is not waived; (3) information revealed to EKMS and ThinkFire employees for the explicit purpose of retaining counsel for Plaintiff is protected, however, this privilege does not extend to those communications made with respect to licensing Plaintiff's technology or in attempting to sell the company; (4) communications made to WitSoundView employees for the purpose of attempting to sell the company is not the type of information the privilege was meant to protect; and (5) Plaintiff has waived privilege as to Maureen Stretch's two privileged documents Judge McKee ordered produced.

What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice from a lawyer. Thus, if what is sought is not legal, but business advice, or if the advice is sought from the consultant and not the lawyer, no privilege exists. Those documents of Borden and Sundeer were made for the purpose of or in connection with obtaining legal advice, whereas, those communications with respect to WitSoundView, EKMS, and ThinkFire were strictly business, with the exception of those communication made for the purpose of retaining legal counsel. Based on this discussion, the Court hereby determines, of the documents sought, Plaintiff has waived privilege as to both documents of Maureen Stretch, all WitSoundView's documents, and all EKMS and ThinkFire documents not disclosed strictly for the purpose of attaining legal counsel.

**B.    Scope of Waiver**

Once a determination is made that the privilege was waived as to certain communications, the secondary issues arises as to the scope of such waiver.  IBM argues that where the Court has determined that Plaintiff waived the attorney-client privilege, Plaintiff has waived whatever privilege might otherwise have attached to all communications on the subject matter of such documents. IBM further asserts that any privilege that might otherwise have attached to Maureen Stretch's legal conclusions and their basis was waived by not objecting during her deposition, and therefore, Plaintiff waived privilege as to the subject matter of her opinions.  It argues that "the proper scope of [Plaintiff's] waiver consists of the specific subject matter of: the construction, scope and infringement of the patents in suit; the validity of the patents; the prosecution of the patents; and the valuation of the patents." IBM's Supp. Motion at 5.  On this basis, IBM concludes that Plaintiff should produce all documents relating to this subject matter.  In general, the Court agrees with IBM – that Plaintiff's waiver extends to the subject matter; however, the Court does not agree with the broad scope of waiver that IBM urges.

"The general rule regarding the voluntary disclosure of privileged attorney-client communications is that the disclosure waives the privilege as to all other communications on the same subject." *Katz v. AT & T Corp.*, 191 F.R.D. 433, 439 (E.D. Pa. 2000) (citing *Helman v. Murry's Steaks,* Inc., 728 F.Supp. 1099, 1103 (D.Del.1990).  This rationale seeks to avoid the unfairness that might result from allowing selective disclosure.  *Id.*  "Courts have recognized that it would be fundamentally unfair to allow a party to disclose opinions which support its position and to simultaneously conceal those that are unfavorable or adverse to its position." *Id.* (citing *Saint-Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.,* 884 F.Supp. 31, 33 (D.Mass.1995)).

"Because of this principle, a waiver of the privilege in an attorney-client communication, even an inadvertent one, 'extends to all other communications relating to the same subject matter.'" *Minebea Co., Ltd. v. Papst,* 228 F.R.D. 34, 35 (D. D.C. 2005) (quoting *In Re Sealed Case,* 877 F.2d 976, 980-81 (D.C. Cir.1989)). Here, the Court concludes that subject matter waiver applies but is limited to the specific content disclosed in the document rather than the broader subject of the document.

In patent cases, the scope of waiver is narrowly construed. *Katz,* 191 F.R.D. at 440; *see also Applied Telematics, Inc. v. Sprint Corp.,* 1995 WL 567436, at *2 (E.D. Pa., Sept. 21, 1995). "A determination as to the scope of the waiver must be made under all the circumstances, including the context in which the disclosure is made and the relative fairness of defining the scope of the waiver to include issues not pursued by the disclosing party." *Id.* For instance, in *Applied Telematics,* the court addressed whether the reliance on an opinion of counsel to defend against a charge of infringement waived the attorney-client privilege as to all opinions and studies concerning the patent at issue. 1995 WL 567436, at *2-*3. The court held that the waiver only extended to issues relied upon by the defendants in defending against a charge of infringement. *Id.* at *3. In limiting the scope of the waiver, the court noted that the defendants did not challenge the validity, enforceability, scope or interpretation of the patent. *Id.* at *2. The court thus limited the waiver to legal opinions regarding infringement. *Id.* at *3.

Plaintiff argues that subject matter waiver should not apply where Plaintiff did not make the disclosure. However, this confuses the purpose of the disclosure with the subject matter disclosed. Although the purpose for which a document is disclosed is relevant in determining the scope of the waiver, the subject matter of the disclosure must be determined in reference to the content of the disclosure. Clearly, distributing otherwise privileged communications between counsel and client

to third parties necessarily waives the privilege with respect to the subject matter of the disclosure. The Court agrees, however, that the waiver of privilege is limited to the specific issues disclosed in the third party communications, for that by definition is the specific subject matter involved. The scope of any subject matter waiver therefore is limited to the specific patents discussed in the disclosed communication and the details of those disclosures.

**C.    Request For Admissions**

On August 17, 2005, IBM served its RFAs upon Plaintiff. Plaintiff served its answers and objections on October 3, 2005. Thereafter, IBM contacted Plaintiff and requested Plaintiff amendment its answers, asserting they were improper or otherwise failed to comply with Rule 36 of the Federal Rules of Civil Procedure. In response, Plaintiff amended its answers, which were served on November 23, 2005. IBM contends that Plaintiff's responses were virtually identical and, therefore, objects on the same grounds. Specifically, IBM assert that Plaintiff's objections to the terminology in RFAs 1, 2, 23, 34, 35, 41, 42, 61-68, 79-86, 92, 106, 121, 122, 146, 148, 152, 166, 168, 172, 186, 188, 192, 403, 404, 425-431, 440, 441, 443, 444, 461, 462, 465, 466, and 471 as "vague and ambiguous" are improper; Plaintiff's denials to RFAs 388-398 are improper because they ignore the word "currently"and even if "Sky" is interpreted to include its predecessors, they refuse to admit the portion of the RFA that is plainly true; Plaintiff improper objects to the relevancy of RFAs 405-431; Plaintiff's denials of RFAs 5, 36, 103, 104, 231, 232, 235, 236, 263-265, 313-315, 327, 350, 351, and 387 are baseless; and (5) Plaintiff's improperly responds that it is unable to admit or deny RFAs 442 and 535-553 based on lack of information. Accordingly, IBM moves to compel Plaintiff to amend its answers or otherwise respond to IBM First Request of Admissions. It contends that Plaintiff should be compelled to file proper answers, or the Court should deem the respective

RFAs admitted.

In making its request, IBM relies on Rule 36(a) of the Federal Rules of Civil Procedure. Pursuant to Rule 36, "A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1)...." Fed.R.Civ.P. 36(a). The broad scope of coverage of the Rule emphasizes its underlying purposes:

> Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.

Notes of Advisory Committee on Rules, 1970 Amendment, 48 F.R.D. 485, 531-532 (1969). "The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." *United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 967 (3d Cir.1988). Further, the Rule provides, in pertinent part:

> The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

Fed.R.Civ.P. 36 (a). A party who has requested admissions and is dissatisfied with the response, may move to determine the sufficiency of answers. *Id.* "If the court determines that an answer does not comply with the requirements of [Rule 36(a)], it may order either that the matter is admitted or that an amended answer be served." *Id.* For the reasons stated below, this Court denies IBM's motion.

In its argument, IBM relies on Rule 36 for the proposition that a Court is authorized, at this

stage of the proceedings, to make a factual determination of the accuracy of a party's denial. However, the plain text of the Rule does not authorize such an order and IBM has cited no precedents in which, on a Rule 36 motion, a court ordered a matter admitted because a party's unequivocal denial of a request for an admission was unsupported by the evidence. The purpose of Rule 36 indicates that such a ruling would be inappropriate. *See Foretich v. Chung,* 151 F.R.D. 3, 4 (D. D.C. 1993); *see also United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988) ("Where ... issues in dispute are requested to be admitted, a denial is a perfectly reasonable response.") "By authorizing requests for admissions, Rule 36 is designed 'to define and limit the matters in controversy between the parties.' " *Id.* (quoting 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil § 2251 (1970)). "A party served with a request for admission has a number of options available to it. He or she can admit the matter at issue, deny the assertion, object to the request, move for a protective order, do nothing, or set out the reasons why he or she can not respond." *Id.* And failure to respond is consider an admission.

In this case, the Court finds that Plaintiff has met the requirements of Rule 36 as to each of its responses. Regardless of their accuracy, Plaintiff's responses are appropriate under Rule 36 and the Federal Rules do not allow IBM to litigate, at this time, whether Plaintiff was justified in denying its request. Further, IBM failed to provided any clarity to its RFAs in response to Plaintiff's objections before requesting amended answers. "[T]he right to challenge the 'sufficiency' of a response is [not] the equivalent of the right to challenge the veracity of a denial." *Foretich*, 151 F.R.D. at 5. There is simply no provision of the Rule allowing a party to litigate a denied request for an admission at this stage of the proceedings. Pursuant to IBM's motion, the Court is called upon to decide each and every factual issue presented by its request for an admission. IBM's motion is

more akin to a motion for summary judgment. The Court will not address those disputes at this stage of litigation. Moreover, Rule 37(c) provides that a party who refuses to admit a certain matter in response to a Rule 36 request can, under certain circumstances, be held liable for expenses incurred by the opposing party in proving that particular matter at trial. *See* Fed.R.Civ.P. 37(c); *see also Foretich v. Chung,* 151 F.R.D. at 5 (D. D.C. 1993). That is where these matters are more properly addressed and, if possible, resolved.

### III.

### CONCLUSION

Accordingly, it is hereby ORDERED Plaintiff's Motion for Partial Reconsideration of Judge McKee's Order of November 28, 2005 (Doc. No. 210) is GRANTED IN PART and DENIED IN PART consistent with the Court's reasoning herein. It is further

ORDERED that Defendant IBM's Supplemental Motion to Compel Production of Alleged Privileged Documents Based on a Subject Matter Waiver of the Privilege (Doc. No. 268) is GRANTED IN PART consistent the scope dictated by the Court herein. It is further

ORDERED that Defendant IBM, Inc.'s Motion to Compel Complete and Proper Responses to its First set of Requests for Admission (Doc. No. 214) is DENIED. It is further

ORDERED that all documents subject to disclosure pursuant to the Court's reasoning herein shall be produce by Friday, February 17, 2006, at 5:00 p.m.

**SIGNED this 13th day of February, 2006.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE